IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION



FILED

FEB - 8 2012

PATRICK E. DUFFY CLERK
BY
Deputy Clerk

| MONTANA SILVERSMITHS, INC., | Case No. CV-11-85-BLG-RFC |
|---|---|
| **Plaintiff,** | |
| vs. | **ORDER RE: DEFENDANTS'** |
| | **MOTION TO DISMISS AND** |
| **TAYLOR BRANDS, LLC; CHRIS** | **PLAINTIFF'S MOTION FOR** |
| **ROTH; MARCIA EATON; and** | **PRELIMINARY INJUNCTION** |
| **JOHN DOES # 1-4,** | |
| **Defendants.** | |

## I.   INTRODUCTION

Plaintiff Montana Silversmiths brings this action for copyright infringement

and misappropriation of trade secrets against Taylor Brands and two of its former

employees, Chris Roth and Marcia Eaton, who now work for Taylor Brands.

Montana Silversmiths alleges Roth and Eaton have used its trade secrets to help

Taylor Brands launch a new line of products that mimic Montana Silvermiths'

most successful products.

Pending before the Court is Montana Silversmith's Motion for Preliminary

Injunction. *Doc. 16.* Montana Silversmiths seeks an order enjoining Defendants from further infringing its copyrighted works and further misappropriating its trade secrets. Also pending is Defendants' Motion to Dismiss For Failure to State a Claim and Lack of Personal Jurisdiction. *Doc. 32.*

## II. FACTUAL BACKGROUND

Montana Silversmiths, Inc. is a Delaware corporation organized in Columbus, Montana in 1973. It is designer, manufacturer, and distributor of over 3,000 Western products, including belt buckles, jewelry, trophies and awards, home decor, knives, gifts, and lifestyle products for Western enthusiasts. In addition to using authorized dealers throughout the United States and Canada, Montana Silversmiths sells its products at www.montanasilversmiths.com.

Marcia Eaton worked for Montana Silversmiths from January, 2004 until she was terminated on March 26, 2010. She began as the Executive Administrative Assistant to the President but ended as the Product Development Manager.

Chris Roth was Montana Silversmiths' Territory Sales Representative from December 1996 until April 28, 2011. During his time at Montana Silversmiths, Roth worked in the Northeast and then in South Texas.

Taylor Brands was founded in 1975 as a designer, manufacturer and

2

distributor of knives and accessories. It is a limited liability company based in Kingsport, Tennessee. It distributes its products through authorized retailers and has no offices, employees, or assets in Montana.

In mid-2010, Stewart Taylor, owner of Taylor Brands, contacted Eaton to see if she was interested in working for Taylor Brands and assisting it in developing a new line of Western products. Eaton responded that she was interested, but was still bound by a Separation Agreement with Montana Silversmiths. Taylor and Eaton therefore decided to delay any employment by Taylor Brands until after the Separation Agreement expired on July 15, 2010. Eaton was hired by Taylor Brands on July 16, 2010. She remains a resident of Montana.

Taylor Brands began marketing and selling its new Western jewelry products in April of 2011.

On April 22, 2011, Montana Silversmiths received a misdirected knife replenishment order that Roth had filled for Taylor Brands. Montana Silversmiths has evidence that Roth had been working for Taylor Brands for as long as two years while he was working for Montana Silversmiths. Roth was terminated on April 28, 2011 and is now Taylor Brands' National Sales Manager. Roth is a resident of Texas.

3

Montana Silversmiths alleges Eaton and Roth gained intimate knowledge of

its confidential, proprietary trade secrets, including its products, packaging,

pricing, relationships with vendors, costs, design, marketing, and sales history.

According to Montana Silversmiths, out of its more than 1,000 Western jewelry

and belt buckles, Taylor Brands managed to make a copy that is substantially

similar to its best-selling product. Montana Silversmiths further notes that Taylor

Brands' other products are almost all taken from Montana Silversmiths' 200[1] best-

selling products, and sold at a 30% discount compared to Montana Silversmiths'

prices.

## III.   DEFENDANTS' MOTION TO DISMISS

### A.   COUNTS FOUR AND FIVE, AS THEY RELATE TO EATON, MUST BE DISMISSED EXCEPT FOR BREACHES OF THE SEPARATION AGREEMENT OCCURRING BEFORE ITS EXPIRATION

Count Four of the Complaint[2] alleges Eaton breached a Non-Disclosure

Agreement she entered into during her employment with Montana Silversmiths

---

[1]In his first declaration, dated October 6, 2011, Stimmel avers "Taylor Brands other knock-off products are almost all taken from Montana Silversmiths' top 200 best-selling items. *Doc. 17-1, ¶ 23.* In his supplemental declaration, dated November 11, 2011, Stimmel states "[a]fter reviewing Taylor Brands' Western jewelry line catalogue, I found approximately 38 different items that appeared to be copies of approximately 20 of Montana Silversmiths' best-selling products and designs." *Doc. 34-1, ¶ 8.*

[2]The operative Complaint is the First Amended Complaint and Jury Demand (*doc. 22*), filed on October 17, 2011 in response to Defendants' first Motion to Dismiss (*doc. 9*). References in this Order to the "Complaint" are to the First Amended Complaint.

4

and the Separation Agreement executed upon her termination by

"misappropriating, using, and/or disclosing" Montana Silversmiths' Trade Secrets.

Count Five alleges Taylor Brands "intentionally and improperly interfered with"

Eaton's contractual obligations to Montana Silversmiths. Defendants argue these

claims must be dismissed pursuant to Rule 12(b)(6) Fed.R.Civ.P. because an

integration clause in the Separation Agreement superceded all prior agreements

and the Separation Agreement expired on July 15, 2010, one day prior to her

employment with Taylor Brands.

A claim is subject to dismissal under Rule 12(b)(6) Fed.R.Civ.P. if it lacks a

cognizable legal theory or if it fails to plead sufficient facts, accepted as true and

viewed in the light most favorable to the plaintiffs, to state a claim for relief that is

plausible on its face. *Johnson v. Riverside Healthcare System, LP*, 534 F.3d 1116,

1121-22 (9th Cir. 2008). A facially plausible complaint "pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)

Plausible does not mean probable, but there must be more than a "sheer

possibility" of unlawful action on the part of defendant. *Id.*

Defendants' argument for dismissal of Counts Four and Five as they relate

to Eaton require that the Court consider the Separation Agreement Eaton entered

5

into upon her termination. *Ex. A to doc. 33-1,* Eaton Affidavit (September 26, 2011). "Although generally the scope of review on a motion to dismiss for failure to state a claim is limited to the Complaint, a court may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels-Hall v. National Educ. Ass'n,* 629 F.3d 992, 998 (9th Cir. 2010) (internal quotations omitted). Since the Complaint's allegations rely on the Separation Agreement, *e.g., doc. 22, ¶¶ 38-39, 111-112, 115, & 117,* and there is no question as to its authenticity, it is appropriately considered.

Under the Separation Agreement, Eaton resigned as of March 26, 2010 with three months pay to follow. Each party agreed to forego any claims it may have had and to keep the terms of the Separation Agreement and the circumstances surrounding her termination confidential. Relevant here, Eaton (1) acknowledged she had returned all Montana Silversmiths' property, including, without limitation, computers, files, drawings, documents, software, and materials prepared for or by Montana Silversmiths and (2) represented she would keep trade secrets, proprietary information, and all Company-related information "completely confidential." Further, as of the effective date of March 26, 2010, the Separation

6

Agreement:

> supersedes and replaces any and all prior agreements, understandings and arrangements, whether written or oral, between the Parties ("Prior Agreements"), and the parties hereby agree that except as otherwise provided herein this Agreement hereby terminates the Prior Agreements and that they have no ongoing rights, benefits, privileges, duties, obligations and/or responsibilities arising out of, or in connection with, such Prior Agreements and that all such Prior Agreements are terminated.

Finally, Addendum A, signed on May 14, 2010, roughly six weeks after the

Separation Agreement, provides: "[t]his addendum to the attached

CONFIDENTIAL SEPARATION AGREEMENT AND GENERAL RELEASE

between MONTANA SILVERSMITHS, INC., a Delaware corporation and Marcia

Eaton, an individual, defines the expiration date to be July 15, 2010."

When the terms of a contract are clear and unambiguous, courts must

enforce them as written. *Boyne USA, Inc. v. Lone Moose Meadows, LLC*, 235 P.3d

1269, 1272 (Mont. 2010). Therefore, since the Separation Agreement expressly

revoked any prior agreements between Eaton and Montana Silversmiths, any claim

that Eaton breached the prior Non-Disclosure Agreement or the Montana

Silversmith Employee Handbook by misappropriating Montana Silversmiths

Trade Secrets (Complaint, ¶ 35-36, 114) fails to state a claim upon which relief

may be granted. Similarly, any claim that Taylor Brands tortiously interfered with

Eaton's Non-Disclosure Agreement is also implausible and must be dismissed. Montana Silversmiths concedes as much by not addressing the Non-Disclosure Agreement in its response brief.

Turning to the Separation Agreement, Count Four seemingly alleges a plausible claim for breach of paragraph 6, entitled "Trade Secrets and Confidential Information," on the part of Eaton. Likewise, Count Five seems to allege a plausible claim that Taylor Brands tortiously interfered with paragraph 6 of the Separation Agreement.

But then there is Addendum A to the Separation Agreement, added roughly six weeks after the original agreement, for reasons not revealed in any of the papers filed with the Court. Addendum D "defines the expiration date to be July 15, 2010." If the Separation Agreement expired on July 15, 2010, then Eaton would have had no contractual duty to maintain the confidentiality of Montana Silversmiths' trade secrets, and Taylor Brands could not have tortiously interfered with the Separation Agreement, after that date.

Before addressing whether the Complaint alleges breaches of or tortious interference with the Separation Agreement prior to July 16, 2010, the Court considers Montana Silversmiths' argument that the expiration date provided in Addendum A is "so hopelessly vague and indefinite as to be unenforceable."

8

Specifically, Montana Silversmiths notes that the term "expiration date" does not appear in the Separation Agreement, the Addendum does not explain the effect of the Separation Agreement, or state whether it purports to terminate some or all of the Separation Agreement's obligations. Montana Silversmiths therefore argues the addendum is unenforceable, citing *In re Estate of Bolinger,* 971 P.2d 767, 775 (Mont. 1998).

But *Bolinger* involved a sparse oral agreement where one party said "you understand you have to pay your share" and the other responded "of course." *Id.* Here, the Addendum is in writing, names both parties, is signed by both parties, and expressly states that it is an addendum to the Separation Agreement. An ambiguous term is one that is susceptible to more than one meaning. *K&R Partnership v. City of Whitefish,* 189 P.3d 593, 601 (Mont. 2008). The Addendum speaks only of the attached Separation Agreement and does not mention any of its individual provisions. The only reasonable interpretation is that the expiration date applies to the entire Separation Agreement. And there is no ambiguity in the term "expiration date."

With that established, the Complaint must allege acts occurring on or before July 15, 2010 to state plausible claims arising out of the breach of the Separation Agreement. In relevant part, the Complaint alleges that upon her employment

9

with Taylor Brands, Eaton began sharing Montana Silversmiths' trade secrets and that in the summer of 2010, presumably after she was employed by Taylor Brands, Eaton contacted Montana Silversmith employees to acquire contact information for one of its suppliers and a copy of a catalog on which Eaton had written historical sales figures for Montana Silversmiths' products. Complaint, ¶¶ 52-53. Eaton's averment that she did not become employed with Taylor Brands, or discuss Western jewelry designs with it, until the Separation Agreement expired on July 16, 2010 likely precludes any claim for breach of contract on the part of Eaton or for tortious interference with the contract, but since this Court cannot consider such evidence on a 12(b)(6) motion, dismissal in the entirety would be premature.

In sum, since the Separation Agreement revoked all commitments Eaton may have had under the prior Non-Disclosure Agreement, Counts Four and Five must be dismissed to the extent they relate to Eaton and the Non-Disclosure Agreement. Further, since the Separation Agreement expired on July 15, 2010, Eaton's contractual duty of confidentiality ended then and Counts Four and Five do not state plausible claims as to actions occurring after that date. With respect to Eaton, all that remains of Counts Four and Five are claims relating to the breach of the Separation Agreement occurring before its expiration date.

10

## B.   MONTANA SILVERSMITHS ALLEGES A PLAUSIBLE CLAIM FOR MISAPPROPRIATION OF TRADE SECRETS

Defendants argue the Complaint merely contains a formulaic recitation of

the elements of a trade secret misappropriation claim and lacks sufficient facts to

plead a plausible claim for relief. They argue Montana Silversmiths has failed to

allege its trade secrets with sufficient particularity, as well as any misappropriation

on their part.

Montana law defines a "trade secret" as

information ..., including a formula, pattern, compilation, program, device, method, technique, or process, that:

>    (a) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and

>    (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Mont. Code Ann. § 30-14-402(4).

The Complaint identifies Montana Silversmiths' trade secrets as

"information regarding Montana Silversmiths' products, product packaging,

relationships with its foreign and domestic vendors, product pricing, costs, design,

marketing and, most importantly, the sales history of Montana Silversmiths'

products, including which products were particularly successful." Complaint, ¶

11

31. Defendants argue many of these things, such as what products Montana Silversmiths sells, how they are packaged, how they market their products, and the prices they charge are not trade secrets because they are generally known or readily ascertainable. In response to these arguments, Montana Silversmiths only defends the sales history of its best-selling products as a trade secret. In the Court's view, Montana Silversmiths has sufficiently alleged that it has a trade secret in the sales history of its best-selling products.

Further, the Complaint sufficiently alleges that Montana Silversmiths took steps to maintain the secrecy of this trade secrets. Defendants note that Montana Silversmiths agreed to the Separation Agreement with an expiration date and therefore argue that Montana Silversmiths did not take reasonable efforts to maintain the secrecy of its trade secrets. But the Complaint plainly alleges that both Eaton and Roth were required to sign Non-Disclosure Agreements and that Montana Silversmiths had a section in its Employee Handbook reminding employees of this obligation. Complaint, ¶¶ 33-36k 43-44. This is sufficient. *See MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 521 (9th Cir. 1993)(applying California's Uniform Trade Secrets Act to hold that plaintiff took reasonable steps to maintain secrecy of trade secrets by requiring employees to sign confidentiality agreements.).

12

Defendants also argue the Complaint fails to allege misappropriation of the

alleged trade secrets. For purposes of this case, "Misappropriation" means:

> disclosure or use of a trade secret of another without express or implied
> consent by a person who ... at the time of disclosure or use, knew or had
> reason to know that the person's knowledge of the trade secret was:
>
>> (B) acquired under circumstances giving rise to a duty to maintain its
>> secrecy or limit its use; or
>>
>> (C) derived from or through a person who owed a duty to the
>> person seeking relief to maintain its secrecy or limit its use ...

Mont. Code Ann. §§ 30-14-402(2)(b)(ii)(B) & (C).

The Complaint more than sufficiently alleges that Eaton and Roth used

Montana Silversmiths trade secrets to help Taylor Brands copy Montana

Silversmiths' best-selling products. Defendants argue that Eaton was not under

any contractual duty after July 15, 2010 to maintain confidentiality of the trade

secrets and the law does not require employees to erase their memory of general

knowledge and skills learned during prior employment. *IKON Office Solutions,*

*Inc. v. American Office Products, Inc.*, 178 F.Supp.2d 1154, 1169 (D.Or. 2001).

But more is at issue here than knowledge of customers and the industry. *Id.*

Montana Silversmiths alleges Eaton and Roth took their knowledge of exactly

which products were the most successful and helped Taylor Brands copy those

same products. Thus, the cases cited by Defendants (*doc. 37, p. 6*) are

13

distinguishable.

Moreover, it is well-settled that one of the implied covenants of employment is that an employee will hold sacred trade secrets acquired during employment. And even after employment terminates, employees have an implied obligation to not use trade secrets for the benefit of a rival and to the detriment of the former employer. L. S. Tellier, *Implied obligation of employee not to use trade secrets or confidential information for his own benefit or that of third persons after leaving the employment,* 165 A.L.R. 1453 (1946). One Montana district court has held that the covenant of good faith and fair dealing that is implied in every employment relationship, combined with Montana Code § 39-2-102's rule that everything gained by way of employment except the employee's compensation belongs to the employer during and after employment, imposes on employees a legal duty to protect trade secrets and confidential information beyond the term of employment. *Digital Development Corp. v. Prewit,* 2009 Mont.Dist. LEXIS 671 (Mont. Dist. 2009), *citing Union Pacific R. Co. v. Mower,* 219 F.3d 1069, 1073 (9th Cir. 2000).

Accordingly, Count Two of the Complaint pleads a plausible claim for misappropriation of Montana Silversmiths' trade secrets.

## C. THIS COURT HAS PERSONAL JURISDICTION OVER ROTH AND TAYLOR BRANDS

Defendants also argue that neither Taylor Brands nor Chris Roth are subject to personal jurisdiction in Montana. Recognizing that Taylor Brands and Roth do not have "continuous and systematic general business contacts" approximating a physical presence that would justify general personal jurisdiction, *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004), Montana Silversmiths responds that both are subject to specific personal jurisdiction of Montana courts.

In response to a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating jurisdiction. *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). Where, as here, the motion is not based on an evidentiary hearing, but on written materials, the plaintiff can defeat the motion by making a prima facie showing of jurisdictional facts. *Id.* Although the plaintiff cannot "simply rest on the bare allegations in the complaint," uncontroverted allegations in the complaint must be taken as true unless they are contradicted by affidavit, in which case factual disputes are resolved in the plaintiff's favor. *Id.*

Since there is no applicable federal statute governing personal jurisdiction,

15

this Court applies Montana law to determine whether it has jurisdiction over Roth

and Taylor Brands. *King v. American Family Mut. Ins. Co.,* 632 F.3d 570, 578

(9th Cir. 2011). Moreover, because Montana's long-arm statute, Rule 4(B)(1)

Mont.R.Civ.P., extends personal jurisdiction over nonresident defendants to the

limits of federal due process, the Court need only consider the familiar three-part

test to determine whether the party has sufficient minimum contacts to be

susceptible to specific personal jurisdiction. *Id.* at 578-79.

If any one of the following factors are not satisfied, this Court may not

exercise specific personal jurisdiction:

(1) The non-resident defendant must purposefully direct his activities
or consummate some transaction with the forum or resident thereof;
or perform some act by which he purposefully avails himself of the
privilege of conducting activities in the forum, thereby invoking the
benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the
defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and
substantial justice, *i.e.* it must be reasonable.

*Id.* at 580-81. Montana Silversmiths bears the burden of proof under the first two

prongs of the test, and if it succeeds, the burden then shifts to the Defendant to

"present a compelling case" that the exercise of jurisdiction would be

unreasonable. *Schwarzenegger,* 374 F.3d at 802. Montana Silversmiths is only

16

required to establish personal jurisdiction as to one of its claims because the

doctrine of pendent personal jurisdiction grants jurisdiction over claims which

arise out of a "common nucleus of operative facts." *CollegeSource, Inc. v.*

*AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011). Here, Montana

Silversmiths relies on the trade secret misappropriation claim to establish specific

personal jurisdiction over Roth and Taylor Brands.

    Montana Silversmiths can satisfy the first part of the test by showing that

(1) Defendants purposefully availed themselves of the privilege of conducting

activities in Montana or (2) purposefully directed their activities toward Montana.

*Id.* Relevant here, purposeful direction, is more common in tort, and focuses on

the defendants actions from outside the forum directed to the forum. *Id.* The

purposeful direction test is an "effects" test that focuses on where the defendant's

actions were felt, regardless of where the actions occurred. *Mavrix Photo, Inc.*,

647 F.3d at 1228. This is consistent with Montana's long arm statute, which

extends jurisdiction over non-residents as to claims arising out of the commission

of acts that result in the accrual of a tort action within Montana. Mont. R. Civ. P.

4B(1)(b). To demonstrate specific personal jurisdiction under the "effects" test,

the defendant must have allegedly (1) committed an intentional act, (2) expressly

aimed at the forum state, (3) causing harm that the defendant knows is likely to be

suffered in the forum state. *Mavrix Photo, Inc.,* 647 F.3d at 1228.

Montana Silversmiths alleges Roth, Eaton, and Taylor Brands intentionally colluded to unfairly compete with Montana Silversmiths in launching a competing line of Western merchandise by copying Montana Silversmiths' best-selling products using trade secrets obtained from two of Montana Silversmiths' former employees. This is an intentional act aimed at a Montana corporation. *See CollegeSource, Inc.,* 653 F.3d at (the "express aiming" requirement is satisfied by allegations that the defendant engaged in wrongful conduct targeted at a plaintiff whom the defendant knows is a resident of the forum state). And it is likely to cause harm to Montana Silversmiths in the forum state. *Id.* (for jurisdictional purposes, a corporation incurs economic loss in the forum of its principal place of business).

Montana Silversmiths also alleges that Taylor Brands reached into Montana to hire Eaton and Roth. Although Roth was not living in Montana at the time, the Complaint alleges he was employed by Montana Silversmiths for two years while concurrently employed by Taylor Brands. With respect to Eaton, although she was no longer employed by Montana Silversmiths when she was contacted by Taylor Brands, she was living in Montana at that time and continues to do so.

Defendants attempt to negate the alleged enticement and employment of

Eaton and Roth from consideration in the effects test with a citation to *Drayton Enterprises, L.L.C. v. Dunker,* 142 F.Supp.2d 1177 (D. N.D. 2001), but that case actually supports Montana Silversmiths. In *Drayton,* the only contacts between the defendant and the forum state of North Dakota was that it hired a former employee of the plaintiff alleging misappropriation of trade secrets and the harm was felt in North Dakota. 142 F.Supp.2d at 1183-84. But the employee had left North Dakota and his job with Plaintiff two years before he was hired by defendant and allegedly disclosed the trade secrets. *Id.* In fact, the court noted it was a "difficult case," and the defendant did not enter the forum state to entice the employee–if it had, "the case for jurisdiction might well be stronger." *Id. citing Ciena Corp. v. Jarrard,* 203 F.3d 312, 318 (4th Cir. 2000) (extending jurisdiction over a former employee in a trade secrets case in part because the employee's "abrupt departure from the company to work for a competitor" implicated training and experience she acquired in the forum state). Here, both employees allegedly enticed by Taylor Brands had some connection to Montana.

The second part of this Circuit's specific jurisdiction test asks whether the claim arises out of or relates to the defendant's forum-related activities. *King,* 632 F.3d at 579. This factor is satisfied here because the trade secret misappropriation claim arises out of Defendants use of Montana Silversmiths' trade secrets to create

19

a competing line of Western merchandise. *CollegeSource, Inc.*, 653 F.3d at 1079.

Finally, since Montana Silversmiths has made a prima facie showing that the exercise of personal jurisdiction over Roth and Taylor Brands is constitutional, Defendants must respond with a "compelling case" that doing so would be unreasonable and therefore in violation of due process. *Id.* This inquiry involves seven factors:

(1) the extent of the defendant's purposeful injection into the forum state's affairs;

(2) the burden on the defendant of defending in the forum;

(3) the extent of the conflict with the sovereignty of the defendant's state;

(4) the forum state's interest in adjudicating the dispute;

(5) the most efficient judicial resolution of the controversy;

(6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and

(7) the existence of an alternative forum.

*Id.* In their initial brief, Defendants ignore the Ninth Circuit's seven-factor test in favor of a five-factor test from the Eleventh Circuit. *Doc. 33, pp. 27-29, citing Madara v. Hall*, 916 F.2d 1510, 1517 (11th Cir. 1990). Defendants also do not respond to Montana Silversmiths' arguments regarding reasonableness in their

20

reply brief.

First, the Ninth Circuit has made clear that "[a]ctions directed at a forum resident expected to cause harm in the forum constitute purposeful injection." *CollegeSource, Inc.,* 653 F.3d at 1079. This factor therefore weighs in favor of Montana Silversmiths.

Second, although Defendants are no doubt burdened by having to defend this suit in a state where they have no presence, advances in modern transportation and telecommunications have significantly lessened the burden of litigation in distant forums. *Id.* Further, Defendants have already retained local counsel and the *pro hac vice* admission of a Tennessee lawyer. As such, this factor weighs only slightly in favor of Defendants, as it probably does in every case.

The third factor is more applicable to foreign defendants. *See Insurance Co. of North America v. Marina Salina Cruz,* 649 F.2d 1266, 1272 (9th Cir. 1981). In any event, Defendants do not cite any conflict with the sovereignty of the State of Tennessee.

Fourth, Defendants argue that Montana has little interest in adjudicating this dispute since none of the complained of activity took place within the state. But not only is it alleged that Taylor Brands reached into Montana to hire Roth while he was still employed by Montana Silversmiths, Eaton is a resident of Montana

21

and was presumably in Montana when the wrongdoings attributed to her allegedly

occurred. Finally, Montana has a strong interest in providing a forum to

adjudicate torts inflicted allegedly upon its residents. This favor weighs in favor of

Montana Silversmiths.

The fifth factor involves a consideration the location of the witnesses and

evidence to determine the most efficient forum. *Bauman v. DaimlerChrysler

Corp.,* 644 F.3d 909, 927-28 (9th Cir. 2011). Even if Defendants had

demonstrated that most of the witnesses and evidence were located in Tennessee,

this factor is no longer heavily weighted in light of modern technology. *Id.* at 928.

Considering that evidence and witnesses are located in both Montana and

Tennessee, this factor is neutral.

Finally, the sixth and seventh factors are ordinarily considered together.

*Bauman,* 644 F.3d at 928. And the seventh factor, the existence of an alternative

forum, is only relevant when the forum state is shown to be unreasonable.

*CollegeSource, Inc.,* 633 F.3d at 1080. Defendants have not done so. Moreover,

since suit has already been filed here and this Court is already familiar with the

issues, adjudicating the case will provide Montana Silversmiths with convenient

and effective relief.

In sum, the only factor that favors Defendants is the burden of litigating

22

away from its home state and, as noted, that burden is slight in the modern era.
After consideration of all the seven factors, the only conclusion is that Defendants
have not met the "heavy burden" of demonstrating a "compelling case" that
jurisdiction over Roth and Taylor Brands would be unreasonable. *See Dole Food
Co., Inc. v. Watts,* 303 F.3d 1104, 1117 (9th Cir. 2002).

Accordingly, Defendants motion to dismiss for lack of personal jurisdiction
must be denied.

## IV. MONTANA SILVERSMITHS' MOTION FOR PRELIMINARY INJUNCTION

Both the Copyright Act and Montana's Uniform Trade Secrets Act
authorize injunctive relief to prevent or restrain infringement of a copyright, 17
U.S.C. § 502(a), or actual or threatened misappropriation of trade secrets, Mont.
Code Ann. § 30-14-403(1). Further, although the injunction provisions in Eaton's
Separation Agreement expired on July 15, 2010, Roth's Non-Disclosure
agreement may also authorize Montana Silversmiths to enjoin violations.

A party seeking a preliminary injunction must establish (1) a likelihood of
success on the merits, (2) a likelihood of suffering irreparable harm if the
preliminary injunction is denied, (3) that the balance of equities tips in its favor,
and (4) that an injunction is in the public interest. *Winter v. Natural Resources
Defense Council, Inc.,* 555 U.S. 7, 20 (2008). In determining whether Montana

23

Silversmiths has met its burden, this Court is guided by the United States Supreme

Court's advisement that a preliminary injunction is an "an extraordinary and

drastic remedy" that should be denied unless the movant carries the burden of

persuasion by a clear showing. *Mazurek v. Armstrong,* 520 U.S. 968, 972

(1997)(per curiam).

### A.   LIKELIHOOD OF SUCCESS ON THE MERITS

#### 1.   MISAPPROPRIATION OF TRADE SECRETS AND BREACH OF CONTRACT CLAIMS

As discussed above, Montana Silversmiths has alleged a plausible claim

that Roth, Eaton, and Taylor Brands misappropriated Montana Silversmiths trade

secrets in its knowledge of its best-selling products to create a competing line of

Western jewelry. But in determining whether to grant a preliminary injunction,

the Court must go beyond the allegations to the evidence.

A review of Dave Stimmel's declaration (*doc. 17-1*) reveals sufficient

circumstantial evidence from which a reasonable jury could conclude that

Defendants misappropriated Montana Silversmiths' trade secrets. Specifically, it

could be an unlikely coincidence, but the timing of Eaton and Roth's employment

with Taylor Brands and Taylor Brands' subsequent line of Western products is

suspect. What's more, Roth was working for Taylor Brands for as long as two

24

years while he was working for Montana Silversmiths and Eaton called a Montana

Silversmiths employee to get a copy of a catalogue in which she had written

historical sales information for the products within. Then, a few months later,

when Taylor Brands released its product line, almost all of its products are copies

of Montana Silversmiths' 200 best-selling items.

Defendants argue Montana Silversmiths is not likely to succeed on the

merits of the trademark misappropriation claim because Montana Silversmiths'

best-selling products are generally known or readily ascertainable. As noted, a

"trade secret" must not be "readily ascertainable by proper means by other persons

who can obtain economic value from its disclosure or use" and must be "the

subject of efforts that are reasonable under the circumstances to maintain its

secrecy." Mont. Code Ann. § 30-14-402(4). Montana Silversmiths must therefore

prove its best-selling items were not generally known or readily ascertainable by

proper means. *Billmayer v. City of Kalispell,* 160 P.3d 869, 871 (Mont. 2007).

Defendants note that Montana Silversmiths provides its retailers with lists

of its best-selling items on request and has submitted to the Court an "Order

Guide" dated October 18, 2011 which contains a six-page list of "Montana

Silversmiths Regional Bestsellers." *Doc. 31,* Dec. Marcia Eaton, ¶ 20, Ex. 4 (Oct.

28, 2011) (filed conventionally). Included on this list are both products claimed

25

by Montana Silversmiths to be copyright-infringing items. Defendants further note that Montana Silversmiths publishes a "Signature Catalog" featuring the "best selling Montana Silversmiths products. *Id.* at ¶ 20, Ex. 5. Again, the 2011 version features both products alleged to have infringed Montana Silversmiths' copyrights in this action. *Id.*

Montana Silversmiths responds that it claims a trade secret in "detailed sales information" that is not in disclosed in the "Order Guide" or the "Signature Catalog," both of which are not widely distributed. As to the Signature Catalog, Montana Silversmiths notes that it contains over 1,000 items and no competitor could identify its best selling products solely from it. As to its "Order Guide," it claims it is standard industry practice to provide retailers with suggestions as to which products to highlight, but that it never provided the sales history for those items. Montana Silversmiths argues the only way Taylor Brands could identify and copy its 20 best sellers is through reliance on trade secret information acquired from Eaton and Roth.

The question at this stage is whether Montana Silversmiths has demonstrated a likelihood of success on the merits of its trade secret misappropriation claim. In the Court's view, the evidence is equivocal. While success on the trade secret misappropriation claim is certainly possible, and maybe

26

even more likely than not, the likelihood of success on that claim is not strong

enough to outweigh the inequity to Defendants that would result from the broad,

sweeping injunction sought by Montana Silversmiths. Since it involves the same

set of facts, the same is true of the breach of contract claim.

### 2.   COPYRIGHT INFRINGEMENT

Copyright law protects "original works of authorship fixed in any tangible

medium of expression, now known or later developed, from which they can be

perceived, reproduced, or otherwise communicated, either directly or with the aid

of a machine or device." 17 U.S.C. § 102(a). Ideas and concepts, however, are not

copyrightable. 17 U.S.C. § 102(b). For purposes of this motion for preliminary

injunction, Montana Silversmiths argues it is likely to succeed on its copyright

infringement claim regarding its "Bull Rider Belt Buckle" and "Star Design

Necklace and Earrings Collection." Pictures of Montana Silversmiths works and

the alleged copies are attached to this Order as an Appendix.

To succeed on its copyright infringement claim, Montana Silversmiths must

prove (1) ownership of a valid copyright and (2) copying of constituent elements

of the work that are original. *Funky Films, Inc. v. Time Warner Entertainment

Co., L.P.,* 462 F.3d 1072, 1076 (9th Cir. 2006). Alternatively stated, the second

prong requires proof that the defendant copied "protected elements" of the work.

27

*Jada Toys, Inc. v. Mattel, Inc.,* 518 F.3d 628, 636 (9th Cir. 2008). Protected

elements are those which are original, meaning the "product of independent

creation, not novelty." *Id.* at 637.

With regard to the first element, certificates of copyright registration raise a

presumption of a valid copyright. *Triad Systems Corp. v. Southeastern Exp. Co.,*

64 F.3d 1330, 1335 (9th Cir. 1997) *(overruled on other grounds)*; 17 U.S.C. §

410(c). Dave Stimmel's November 11, 2011 declaration and the attachments

thereto show that Montana Silversmiths has valid certificates of copyright

registration for the works at issue. *Doc. 34-1, ¶¶ 9, 10, Ex. 1.*

As to the second element, when there is no evidence of direct copying,

copying can be proved by evidence that the defendant had access to the work and

that the two works are "substantially similar." *Three Boys Music Corp. v. Bolton,*

212 F.3d 477, 481 (9th Cir. 2000).³ Here, it appears that Defendants had full

access to the protected works, so the issue boils down to "substantial similarity."

Under the "inverse ratio rule," if a plaintiff can show a high degree of access,

courts require a lower standard of proof of substantial similarity." *Three Boys*

---

³Although Montana Silversmiths does not argue it and there does not appear to be any
evidence of it submitted to the Court, if Montana Silversmiths can prove that Defendants directly
copied protected expression within its works, then there is no need for a "substantial similarity"
analysis. *Narell v. Freeman,* 872 F.2d 907, 910 (1989).

*Music Corp.,* 212 F.3d at 485.

Under the plain meaning of the term, Taylor Brands' competing piece is "substantially similar" to Montana Silversmiths' "Bull Rider Belt Buckle." "Blatant ripoff" is a more precise term. To a lesser extent, the same is true of Taylor Brands' version of Montana Silversmiths' Star Design Necklace and Earrings Collection. Unfortunately for Montana Silversmiths, it is not that simple.

In the Ninth Circuit, substantial similarity is determined by a two-part test. First, the extrinsic test is an objective test focusing on the articulable similarities between the two works. *Cavalier v. Random House, Inc.,* 297 F.3d 815, 822 (9th Cir. 2002). A plaintiff must raise a triable issue of fact under the extrinsic test to survive summary judgment. *Id.*; *see also Metcalf v. Bochco,* 294 F.3d 1069, 1073 (9th Cir. 2002) (only the extrinsic test is relevant on summary judgment). Second, the intrinsic test, employed by the ultimate finder of fact, is a subjective comparison focusing on whether an ordinary reasonable audience would find the works substantially similar in total concept and feel. *Id.*

To further complicate the matter, copyright law does not provide Montana Silversmiths a monopoly on "expressions that are standard, stock, or common to a particular subject matter or medium." *Satava v. Lowry,* 323 F.3d 805, 810, n.3 (9th Cir. 2003) (applying defensive doctrine of scènes à faire, roughly, "scenes

29

which must be done," in holding that copyright law does not protect the idea of producing a glass-in-glass jellyfish sculpture or to elements of expression that naturally follow from the idea of such a sculpture). Similarly, the "originality" doctrine limits the scope of protection "only to those components of a work that are original to the author, although original selection and arrangement of otherwise uncopyrightable components may be protectable." *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1445 (9th Cir.1994). Montana Silversmiths may have copyright protection in a "combination of unprotectable elements," but they must be "numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." *Satava*, 323 F.3d at 811, *citing Apple Computer, Inc.* 35 F.3d at 1446.

Accordingly, Defendants argue that in determining whether the works are substantially similar under the extrinsic test, the Court must filter out and disregard expressions that are standard, stock, or common to a particular subject matter or medium. *Apple Computer, Inc.* 35 F.3d at 1445; *Satava*, 323 F.3d at 810; *Cavalier*, 297 F.3d at 825-26. Here, that would mean that some of the components of the works that make them similar–like the five-point star within concentric circles on the necklace and earrings and the bull rider figure on the belt buckle–must be disregarded in determining whether the works are substantially

30

similar.

Montana Silversmiths cites *Cavalier* for the proposition that this "mechanically analytical" test does not "readily apply" to artwork as opposed to literature. *Doc. 34, p. 10, citing* 297 F.3d at 826. But *Cavalier* makes clear that "unprotectible [sic] elements should not be considered when applying the extrinsic test to artwork." 297 F.3d at 825-26. What does not "readily apply" to art as it does to literature are factors such as "plot, themes, dialogue, mood, setting, pace, characters, and sequence of events," which are considered in evaluating literary works under the extrinsic test. 297 F.3d at 822, 826. In the place of these factors, courts consider things such as "subject matter, shapes, colors, materials, and arrangement of representations" when evaluating art under the extrinsic test. *Cavalier*, 297 F.3d at 826. Although Montana Silversmiths is correct that the works should be compared as a whole, comparison as a whole is done by the ultimate factfinder under the intrinsic test. *Id.* Montana Silversmiths is also correct that infringement can be based on original selection and arrangement of unprotectable elements, but "the unprotectable elements have to be identified, or filtered, before the works can be considered as a whole." *Cavalier*, 297 F.3d at 826.

Defendants are therefore correct that aspects of Montana Silversmiths'

31

products that are common ideas used in Western jewelry must be filtered out when comparing the works in the extrinsic test. With respect to the Star Necklace and Earrings, Defendants convincingly argue that Montana Silversmiths cannot corner the Western jewelry market on a five-point star within a concho made with silver electroplating. A "concho" is a defined jewelry term meaning "round or oval metal pieces that are often embossed with Western designs" and are "popular in creating costume jewelry with a Western motif." *Judson & Company Jewelry Glossary,* http://judson.biz/wholesale-fashion-jewelry-glossary.php (last accessed Jan. 20, 2012). Montana Silversmiths cannot claim to have originated the use of a concho in jewelry. Similarly, the five-point star represents a sheriff's badge, perhaps the most ubiquitous Western icon. Finally, the fact that a five-pointed star within a circular concho is not a design that is original to Montana Silversmiths is proven by the numerous examples attached as Exhibit 2 to Eaton's October 28, 2011 declaration. *Doc. 31, Ex. 2.*

When these unprotectable elements are filtered out, the only striking similarity that remains are the concentric circles surrounding the five-point star in the center. Although Montana Silversmiths could persuade a jury that the combination of unprotectable elements are protectable under the extrinsic test because "the over-all impact and effect indicate substantial appropriation,"

32

especially if Montana Silversmiths can show a high degree of access, *Three Boys Music Corp.*, 212 F.3d at 485, copyright law places a heavy burden upon plaintiffs when the subject work is something as common as a silver five-pointed star on a circular pendant. Further, there are articulable differences such as the chains, the piece that attaches the chain to the concho, and the black background or open space in Taylor Brands' work. Montana Silversmiths is not very likely to succeed on its infringement claim relating to the Star Design Necklace and Earrings.

The Bull Rider Belt Buckle, however, is a different story. Defendants argue there are three unprotectable elements of the belt buckle: the bull rider "event figure" surrounded by a filigree pattern, the oval shape, and the "ball" outer edge. But even if all of these things are disregarded under the extrinsic test, the selection and arrangement of the unprotectable elements are objectively similar. *Cavalier*, 297 F.3d at 826. Looking at the works side-by-side, it appears Defendants merely added the barb wire ring, made the bull rider right-handed, and rotated the large balls on the "ball edge" 45 degrees. The identical red gemstones with silver enclosures at approximately 120 and 300 degrees could not be an accident.

### B.  A LIMITED INJUNCTION DIRECTED AT THE INFRINGING BELT BUCKLE IS WARRANTED

Having concluded that Montana Silversmiths is really only likely to succeed

on its copyright infringement claim concerning the Bull Rider Belt Buckle, Taylor

Brands' allegedly infringing Bull Rider Belt Buckle is the only proper subject for

a preliminary injunction. As noted, there is a possibility of success on the

infringement claim related to the Silver Star Necklace and Earrings, and a greater

possibility of success on the trade secret misappropriation and breach of contract

claim, but the smaller likelihood of success on these claims is outweighed by the

potential damage an injunction would cause Taylor Brands if it is ultimately

successful on those claims. Moreover, Montana Silversmiths is ultimately

successful on one or more of its other claims, damages at law and a broader,

permanent injunction are available remedies. In any event, consideration of the

three remaining factors compels a conclusion that a narrow injunction against the

production and sale of Taylor Brands' knock-off belt buckle is justified.

First, although there is no longer a presumption of irreparable harm in

copyright infringement cases, it is not difficult to establish. *Apple Inc. v. Psystar*

*Corp.*, 673 F.Supp.2d 943, 948 (N.D. Cal. 2009). Montana Silversmiths avers it

has devoted "years of hard work, investment, innovation, market and product

research and development, and resulting knowledge of the Western design product

customer" to earn "significant consumer goodwill, brand recognition, [and] a

business reputation as an innovated and producer of affordable, quality Western

34

design products and a corresponding competitive market share" which are crucial to its viability and success. Dec. of Dave Stimmel, ¶ 9 (Oct. 6, 2011), *doc. 17-1.* It further avers that Taylor Brands is selling its infringing products at a 30% discount compared to Montana Silversmiths' items. *Id.* at ¶ 24. It also appears that at least one retailer is selling Taylor Brands' Western products in a Montana Silversmiths display case alongside Montana Silversmiths' products. *Id.* at Ex. D. Montana Silversmiths therefore argues its goodwill, business reputation, and market share will be harmed if Defendants are allowed to sell their infringing belt buckle alongside theirs. This harm to business reputation and goodwill is sufficient to establish a likelihood of irreparable harm if Taylor Brands is allowed to continue selling its knock-off Bull Rider Belt Buckle. *See  Rent-A-Center, Inc. v. Canyon Television & Appliance,* 944 F.2d 597, 603 (9th Cir.1991).

Further, balancing the equities of a narrow injunction against sales of the allegedly infringing belt buckle, this Court agrees that potential injury to an likely copyright infringer like Taylor Brands "merits little equitable consideration." *Autoskill Inc. v. National Educational Support Systems, Inc.,* 994 F.2d 1476, 1498-99 (10th Cir. 1993), *cert. denied,* 510 U.S. 916 (1993), *overruled on other grounds by TW Telecom Holdings Inc. v. Carolina Internet Ltd.,* 661 F.3d 495, 496-97 (10th Cir. 2011). And as discussed below, Montana Silversmiths will be required

35

to post a bond to cover the losses and damages Taylor Brands will occur if it turns out this narrow injunction is entered in error.

As to whether the public interest will be served by an injunction, it is well-established that the public benefits by the enforcement of copyright law. *See Apple Inc.,* 673 F.Supp.2d at 950, *citing Sony Corp. of America v. Universal City Studios, Inc.,* 464 U.S. 417, 429 (1984) (primary purpose of Copyright Act is to benefit the public by the production of artistic works; benefit to the copyright holder is secondary).

Finally, Rule 65(c) Fed.R.Civ.P. mandates that Montana Silversmiths give security in an amount proper to pay the costs and damages Taylor Brands may sustain if it is later determined to have been wrongfully enjoined. Montana Silversmiths notes the Court has wide discretion in setting the amount of the bond, and, in certain cases, may reduce the bond to zero. *Connecticut General Life Ins. Co. v. New Images of Beverly Hills,* 321 F.3d 878, 882 (9th Cir. 2003). According to Montana Silversmiths, no bond is necessary in this case because it is likely to prevail and any harm suffered by Defendants is caused by their wrongful conduct.

But a bond of zero is only allowed where there is no evidence a party will suffer damages in the event of a wrongful injunction. *Id.* Clearly, Taylor Brands would suffer some damages if it was wrongfully enjoined from selling its Bull

36

Rider Belt Buckle. Taylor Brands does not ask for a particular bond, but asks that

it be allowed to submit evidence on the amount of bond required if an injunction is

granted. Regardless, further evidence is unnecessary since this injunction is

limited in scope and Montana Silversmiths is highly likely to succeed on the

infringement claim relating to the Bull Rider Belt Buckle. A $25,000 bond is

sufficient under the circumstances.

## V.   ORDER

For those reasons, **IT IS HEREBY ORDERED** that Defendants' Motion to

Dismiss (*doc. 32* ) is **DENIED**, except as to claims relating to Eaton's breach of

the Non-Disclosure Agreement, breach of the Separation Agreement after July 15,

2010, or Taylor Brands' interference with those contracts. With respect to Eaton,

all that remains of Counts Four and Five are claims relating to the breach of the

Separation Agreement occurring before its expiration date.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Preliminary

Injunction (*doc. 16*) is **GRANTED IN PART:** Taylor Brands is enjoined from

further infringing Montana Silversmiths' copyright in the Bull Rider Belt Buckle

and from further making, selling, or distributing any of its Bull Rider Belt

Buckles. Montana Silversmiths shall provide a $25,000.00 security bond pursuant

to Rule 65(c) F. R. Civ. P. within 7 days of the entry of this Preliminary

Injunction.  The Motion for Preliminary Injunction is **DENIED** in all other

respects.

Dated this _____ day of February, 2012.

Richard F. Cebull
United States District Judge

38